Thank you, Judge Gould. Once again, my name is David Ness with the Federal Defenders of Montana, and I represent Mr. Tyrell Henderson. Mr. Henderson has appealed his conviction for assaulting a federal officer. He was convicted after a very brief trial. The entire testimony took only about two hours and 20 minutes by my count. There were only six witnesses called in total, and the issue was really very simple. It was just simply one of credibility. The jury was presented with two divergent views as to what happened during the course of Mr. Henderson's arrest. The police officer testified that Mr. Henderson assaulted him. Mr. Henderson testified that as he tried to run away, the police officer overtook him from behind. Although the trial was short and the issues were very simple, the trial court took it upon itself to actively question one of the defense witnesses. The questioning involved a tangential issue, but it clearly served to discredit Mr. Henderson's defense and discredit the witness who had testified. Making matters worse, during closing argument, the district court interrupted Henderson's trial counsel, who was trying to make an entirely valid point, that is, that there was evidence that was missing that could have clearly proved Mr. Henderson's guilt, and prevented him from making that point. Well, that's not – that there was evidence missing – I thought that the argument that was interrupted was essentially saying you should have a reasonable doubt because you don't have what the camera would have shown, or you should assume that the camera would have shown something that favors the defendant. I think that the argument that counsel was trying to make was that – I'm trying to find it here in the – I don't remember the exact words, but I thought the substance was if there had been a camera in the front of that car on, then we wouldn't be here today. Well, I think the testimony was that he said that the government was missing – or rather the police officers was missing one of the tools that they normally have, and there was clearly testimony to that effect. One of the officers testified that she had a camera, but no film. But the judge said you can argue that there was no camera in the car, but you can't argue what it would have shown. I think counsel's argument says now there's a tool in the government's arsenal that they could have used to eliminate reasonable doubt, and that's a camera in the car. And I'm sure you have all seen these on TV shows or on the news. It's a dash cam that shows what happened. But we don't have that here, and that has left reasonable doubt. It was dark. At that point, he was interrupted. Counsel, that's not an argument based on the record, except for the fact that there was no camera in the car. But what the camera would have shown cannot be argued. So as I read that, the argument was you should have a reasonable doubt because there was no camera, and therefore you don't know what it would have shown. Whereas the argument you make in your brief is that it should have been permissible to show one way or the other what happened. But that's not the argument that the lawyer, the defense lawyer, was making. And I would suggest that if he really had said it would show one way or the other, that the judge might not have stopped him. But that's not what he was trying to say, as I read the transcript. Well, but then I think when you look at counsel's response, counsel then responds to the court's admonition, if you will. He says, that's my point. And then he broke off. I don't know so much that counsel, and I didn't try the case, but I don't know that counsel was going to say the camera would have shown X. It was more in the nature of arguing, like is often done, there were no fingerprints. There is no DNA evidence, that sort of thing, and that would clinch the government's case. We don't have that here, and all this is is a question of credibility, and then go on to try to discredit the government's argument. So I think that's what counsel was trying to get to there, as I read the transcript. But at any rate, I think that in these types of cases where a court is reviewing a judge's participation, the court will reverse if there is actual bias, there's shown actual bias, or if the judge's participation leaves an inviting impression that the judge's remarks in questioning if the witness has projected an appearance to the jury of advocacy or partiality. And that, I would submit, is present in this case. And in doing so, I would look at several factors. One was the necessity for the court to question this. Mr. Sines stated it was on a tangential issue, but it was clearly looking to try to undermine Mr. Sines' testimony. And even after the jury was sent out, the judge made the remark that he thought that his questioning had uncovered perjury on behalf of Mr. Sines. The government capitalized on that during its- He didn't say that. Oh, well- He said somebody was lying. He said somebody was lying. Okay, yes, you are correct. The extent of the judge's interrogation, if you look, Mr. Sines' entire testimony lasted 13 pages. Of those three pages were-the judge took up three pages of those. And although it's obviously impossible from the black and white of the transcript to decipher the judge's manner and tone, I think that there are some telling points in the manner in which the questions were asked. So based upon that, what I would suggest is that this court should reverse Mr. Henderson's conviction based upon the judge's participation in this trial. I think that the judge's participation not only cast Mr. Henderson's defense in a poor light before the jury, but Mr. Henderson was also prohibited from arguing an important component of this case. Thank you. Thank you, Mr. Sines. And you still have a couple of minutes for rebuttal. Now, Mr. Grewal. May it please the Court, Bishop Grewal, on behalf of the United States. The trial court has broad discretion under the case law in managing the sorts of matters here, its own cross-examination and the limiting of closing argument. And in the majority of the cases cited in both the briefs, this court has affirmed the alleged interruptions either as not being improper or as not being prejudicial. In the few cases where it has reversed the conviction, the violations were either much more egregious or more numerous. They were often accompanied by other errors, such as vouching or jurors not being struck for cause. And in those cases, the only evidence was uncorroborated testimony. Those aren't the case here. First of all, in the closing argument interruption, it's almost identical to the interruption that occurred in the Mares case that this court affirmed, where the court simply made this instruction that you shouldn't argue something that's not in evidence. To the extent that the trial court may have misunderstood what defense counsel was attempting to argue, the instruction it gave was clearly simply that you can't say what the camera would have shown. There's nothing improper about that. The cross-examination was basically repetitive of what the government had done in an attempt to clarify. In both the Morgan case and the Godwin cases that are cited in the reply brief of the defendant, this court and the Fourth Circuit said that basically the government had already done that on cross-examination, so there was no prejudice. I guess the final point I would make is in the reply brief, the defendant suggests that this was really just a he said, he said testimony. This wasn't brought out in our brief, and I apologize for it. It should have been. At ER 70 in the record, there's testimony from a Deputy Ball, and Deputy Ball was the person who took the defendant and Mr. Sands, his driver, to the detention center, and she testified that as she was taking them there, Henderson was talking to Mr. Sands about what happened. He said, quote, that he really got effed up, and he shouldn't have rushed that officer because he really got messed up. That's an admission from the defendant himself that he had rushed the officer here. So Officer Love's testimony was not uncorroborated. It was, in fact, corroborated by the defendant's own admission. Unless the court has any questions, I'm happy to cede the remainder of my time. Can I just ask you a question about the questioning of the witness? It seems odd that the judge questioned the witness and then concluded that somebody was lying. That does tend to suggest that the judge was trying to discredit the witness or support the argument that the judge was trying to discredit the witness and thus inject himself into the proceedings in that way. Can you respond to that? Yeah. So at this point, before Judge Haddon interrupts, we've got testimony from Mr. Henderson that he had brought the samurai sword and testimony from Mr. Sands that a third guy had brought it. And so as becomes clear when we get off the record later, the judge was concerned that perjury had been committed in his courtroom. He tends to run a tight courtroom on these issues. I think the questions that he asked were to clarify. He just wanted to make sure that what he thought had happened had happened in his own mind. He then waits until the jury's gone before he says, well, they've lied, and he actually directs one of the agents to investigate perjury here. And so I think he was just concerned about the propriety of his own courtroom. I don't think that impression was given to the jury at all, which is the concern that I think the case will have. And both the defendant and Mr. Sands were both called as witnesses by the defense, right? Correct. And he was then commenting on the contradictions between those two defense witnesses. You mean out of the jury's presence? Out of the jury's presence. Yes, out of the jury's presence. I think he was commenting on he believed that either Mr. Henderson or Mr. Sands had committed perjury because on this very narrow factual issue, a couple very narrow factual issues, they were just so divergent on things that couldn't really be matters of opinion. Well, they're narrow factual issues, but they do go centrally to the credibility of the defendant. Certainly. Yes. Okay. Unless there are other questions, I think your argument can be concluded. Thank you, Mr. Rule. Thank you, Your Honor. And Mr. Ness, you have some rebuttal time. I think just very briefly, counsel indicated that Mr. Henderson had made an admission that he rushed the police officer. And while it is true that Deputy Avis Ball said that he made an admission that he shouldn't have rushed Officer Love, I think it's important to note that Mr. Henderson denied that is what he said. And, in fact, during his testimony, and it's set forth on page 152 of the excerpts of record, counsel asked him, and you heard Deputy Ball say that I'm sorry I rushed him, and Mr. Henderson said I didn't say that, I said I'm sorry I ran. And so I think that there was factual discrepancies all through this that came down to credibility or believability as far as what was said, what happened, and those sorts of things. Okay, thank you. Thank you. The case of United States v. Henderson shall be submitted.
judges: Friedman, Schroeder, Gould